**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC. and ICC EVALUATION SERVICE, LLC,<br><br>                  Plaintiffs,<br><br>     v.<br><br>DRJ ENGINEERING, LLC, a Wisconsin limited liability company, and DRJ ENGINEERING, LLC, an Illinois limited liability company,<br><br>                  Defendants. | Civil Action No. 1:24-cv-4998<br><br>JURY DEMAND |

## COMPLAINT

Plaintiffs International Code Council, Inc. ("ICC") and ICC Evaluation Service, LLC ("ICC-ES" and, together with ICC, "Plaintiffs"), as and for their Complaint against Defendants DrJ Engineering, LLC, a Wisconsin limited liability company ("DrJ Wisconsin"), and DrJ Engineering, LLC, an Illinois limited liability company ("DrJ Illinois") (collectively, "Defendants" or "DrJ"), state as follows:

### I.      NATURE OF THE ACTION

1.    This is an action for trademark infringement, false advertising, and unfair competition under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*) and common law, and for related violations of Illinois law, by direct competitors intent on willfully causing confusion among consumers in the important nationwide market for evaluating building products (to assess their compliance with building codes) through the unauthorized use of ICC's valuable trademarks and the false advertising of the parties' respective goods and services. Building safety professionals and code enforcement officials rely on these goods and services to confirm that the manufacturer of a proposed building product is code-compliant and, thus, can be used or installed within a

particular jurisdiction. Defendants' false advertising, unfair competition, and/or unauthorized use of ICC's valuable trademarks are irreparably harming and, unless enjoined, will continue to irreparably harm ICC and its trademarks and name, business, reputation, and goodwill.

## II. PARTIES

2.      Plaintiff ICC is a non-stock, non-profit corporation organized under the laws of the State of Delaware with its principal place of business located at 200 Massachusetts Avenue, NW, Suite 250, Washington, D.C. 20001. ICC's Central Regional Office is located at 4051 West Flossmoor Road, Country Club Hills, Illinois 60478.

3.      Plaintiff ICC-ES is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 3060 Saturn Street, Suite 100, Brea, California 92821. ICC-ES also has offices located at 4051 West Flossmoor Road, Country Club Hills, Illinois 60478.

4.      ICC-ES is a subsidiary of ICC and part of the ICC family of companies, which are dedicated to the construction of safe, sustainable, affordable and resilient structures.

5.      ICC is the sole member of ICC-ES.

6.      Upon information and belief, Defendant DrJ Wisconsin is a limited liability company organized under the laws of the State of Wisconsin with its principal place of business located at 6300 Enterprise Lane, Madison, Wisconsin 53719.

7.      Upon information and belief, the registered agent for DrJ Wisconsin is Kirk Grundahl with an office at 6300 Enterprise Lane, Madison, Wisconsin 53719.

8.      Upon information and belief, Defendant DrJ Illinois is a limited liability company organized under the laws of the State of Illinois with its principal place of business located at 6300 Enterprise Lane, Madison, Wisconsin 53719.

9.     Upon information and belief, the managers for DrJ Illinois on record with the Illinois Secretary of State are Kirk Grundahl, Ryan Dexter and Suzanne Grundahl, all having a business address at 6300 Enterprise Lane, Madison, Wisconsin 53719.

10.     Upon information and belief, Kirk Grundahl is the President of DrJ Wisconsin, Suzanne Grundahl is Vice President of DrJ Wisconsin, and Ryan Dexter is V.P. of Engineering of DrJ Wisconsin.

11.     Upon information and belief, Kirk Grundahl and Ryan Dexter are Professional Engineers licensed by the State of Illinois and their current status is "active."

### III.     JURISDICTION AND VENUE

12.     This action arises under the trademark and unfair competition laws of the United States and the state of Illinois. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), since they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

13.     Defendants are subject to personal jurisdiction in this district by virtue of their presence in this State; having conducted business in this State; employing Professional Engineers licensed by, and actively practicing within, this State; having availed themselves of the rights and benefits of Illinois law such that they should reasonably anticipate being haled into court in this judicial district; having engaged in systematic and continuous contacts with the State of Illinois, and in particular within this judicial district; from the receipt of revenue from goods used or consumed or activities conducted in this State and in this judicial district; by committing acts of

infringement directly targeting this judicial district; and DrJ Illinois is registered with the Illinois Secretary of State to do business in this State.

14.     Venue is proper in the district under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## IV.     FACTUAL BACKGROUND

### A.     ICC and its Trademarks.

15.     ICC is the leading global source of model codes and standards and building safety solutions that include product evaluation, accreditation, technology, training, and certification. ICC's mission is to provide the highest quality codes, standards, and solutions to ensure safe, affordable, and sustainable communities and buildings worldwide.

16.     ICC's many offerings include product testing, evaluation and certification, which ICC primarily offers through ICC-ES. Among other things, ICC-ES publishes evaluation reports ("ICC-ES Reports") certifying building products, which provide building safety professionals and the general public with confidence and peace of mind that such products meet the highest standards of safety.

17.     Specifically, an ICC-ES Report presents the findings, conclusions, and recommendations from a particular product evaluation. ICC-ES Reports verify that new and innovative building products comply with code requirements and provide information about what code requirements or acceptance criteria were used to evaluate a product, how the product should be identified and installed, and much more.

18.     ICC-ES Reports and product listings guarantee that the relevant product has gone through a rigorous technical evaluation by expert staff, ensuring compliance with the latest applicable codes and standards.

19.     ICC-ES owns a series of "Marks of Conformity" (examples below) that authorized third parties may use to signify that a product has gone through a rigorous technical evaluation by expert staff and received an ICC-ES Report, demonstrating compliance to the latest applicable codes and standards. ICC-ES Marks of Conformity are widely accepted and recognized indicators of compliance with applicable codes and standards and can be found on a wide variety of building, plumbing, and mechanical products around the world.

 

20.     ICC-ES has a detailed "Usage Guide" that governs the use of its Marks of Conformity. *See* **Exhibit A**. In addition to discussing the proper size, placement, and colors of the Marks of Conformity, the guide specifically instructs an authorized user on how to reference an ICC-ES evaluated product in the authorized user's marketing materials. *Id.* at p. 9. "It is important to accurately describe your product as 'ICC-ES Evaluated' in any print or digital marketing material including company website, flyers, presentations, and collateral. **Any other variations of this is unacceptable** (i.e. **ICC Evaluated**, **ICC Approved**, or ICC-ES Approved)." *Id.* (emphasis added). The reason for specifying that use of the phrase "ICC Approved" is an unacceptable use is "that building officials will be the ones to officially approve a product for installation. [Plaintiffs] are simply providing the tools to make this an easier and quicker process!" *Id.*

5

21.     State and local code enforcement officials and government regulators rely on ICC-ES Reports and "Marks of Conformity" to confirm that the proposed building product is compliant with applicable codes and, therefore, can be permitted for use and installation within their respective jurisdictions.

22.     ICC has for many years offered goods and services under a family of trademarks comprised of or incorporating the trademark ICC (collectively, the "ICC Marks"). The ICC logo depicted below is one example of an ICC Mark.



23.     ICC has expended substantial resources in marketing, advertising, and promoting the ICC Marks and has derived substantial revenues from its sale of goods and services under the ICC Marks. ICC's extensive and continuous marketing, advertising, and sale of goods and services under the ICC Marks has generated substantial goodwill and customer recognition in the ICC Marks.

24.     Today, consumers recognize the ICC Marks as an indicator of high-quality goods and services emanating from a single source—ICC.

25.     In addition to its extensive common law rights in the ICC Marks, Plaintiff ICC owns an extensive United States trademark portfolio, which includes, without limitation, the registrations below (the "Registrations").

| Trademark | Reg. No. | Classes | App. / Reg. Date |
|---|---|---|---|
| ICC | 4,718,932 | 9, 16, 25, 35, 37, 38, 41, 42 and 45 | Dec. 23, 2013 / Apr. 14, 2015 |

| Trademark | Reg. No. | Classes | App. / Reg. Date |
|---|---|---|---|
| INTERNATIONAL CODE COUNCIL | 4,665,966 | 9, 16, 25, 35, 37, 38, 41, 42 and 45 | Dec. 23, 2013 / Jan. 6, 2015 |
| ICC INTERNATIONAL CODE COUNCIL | 3,578,864 | 9, 35 and 41 | Jan. 16, 2008 / Feb. 24, 2009 |
| ICC INTERNATIONAL CODE COUNCIL | 3,998,452 | 37, 42 and 45 | Jan. 09, 2008 / Jul. 19, 2011 |
| ICC | 5,351,097 | 9, 16, 25, 35, 37, 38, 41, 42 and 45 | Oct. 23, 2015 / Dec. 05, 2017 |

26. The Registrations are valid, subsisting, and incontestable within the meaning of 15 U.S.C. § 1065, constituting conclusive evidence of the validity of the registered marks, ICC's ownership of the marks, and ICC's exclusive right to use the marks in commerce in connection with the goods and services specified in the registrations. Copies of ICC's federal registration certificates for the Registrations—including full listings of the covered goods and services—are attached as **Exhibit B**.

**B.      Defendants and Their Unlawful Acts.**

27. Upon information and belief, DrJ offers product testing and technical evaluation reports ("TERs") that assess the compliance of building products with various building codes and regulations. DrJ competes with ICC in a national market for the provision of these offerings.

28. Persons interested in viewing and/or obtaining copies of DrJ's TERs may view and/or download them from DrJ's publicly available website at drjengineering.org.

29. Upon information and belief, TERs are available for download by the general public in .pdf format.

7

30.     Any person may also set up an account and download certain TERs bearing the seal of a licensed Professional Engineer, including from a Professional Engineer licensed by the State of Illinois.

31.     In accordance with the Illinois Professional Engineering Practice Act of 1989:

a.  the "use of a professional engineer's seal on technical submissions constitutes a representation by the professional engineer that the work has been prepared by or under the personal supervision of the professional engineer or developed in conjunction with the use of accepted engineering standards. The use of the seal further represents that the work has been prepared and administered in accordance with the standards of reasonable professional skill and diligence." *See* 225 ILCS 325/14.

b.  "Technical submissions are the designs, drawings, and specifications that establish the scope of the professional engineering project, the standard of quality for materials, workmanship, equipment, and constructions systems, and the studies and other technical reports and calculations prepared in the course of the practice of professional engineering. All technical submissions prepared by or under the personal supervision of a professional engineer shall bear that professional engineer's seal, signature, and license expiration date." *See* 225 ILCS 325/15(a).

c.  "All technical submissions intended for use in the State of Illinois shall be prepared and administered in accordance with standards of reasonable professional skill and diligence. Care shall be taken to reflect the requirements of State statutes and, where applicable, county and municipal ordinances in such submissions. In recognition that professional engineers are licensed for the protection of the public, health, safety, and welfare, submissions shall be of such quality and scope, and be so administered, as to conform to professional standards." *See* 225 ILCS 325/15(b).

32.     According to the website of Pushing7, a company engaged by DrJ to build a custom software tool ([https://www.pushing7.com/work/case-studies/2021-12/drj-engineering](https://www.pushing7.com/work/case-studies/2021-12/drj-engineering)), DrJ delivers "close to 1,000" computer-generated, sealed "documents," including sealed TERs, to its customers every month using the software designed for this purpose. *See* **Exhibit C** ("When DrJ told us that they wanted to build a site that could dynamically apply an engineer's seal to a variety of PDF reports by state, we quickly realized that an off-the shelf solution wasn't going to cut it.

After researching and testing a number of PDF manipulation libraries and a few cost-prohibitive software-as-service solutions, we built a custom Drupal site that allows staff to maintain content for two different domains from a single administrative interface. We also built a custom module that delivers close to 1,000 sealed documents to DrJ customers each month as well as a progressively decoupled single-page application that helps users quickly find the Technical Evaluation Reports they need.").

33.     By way of one example, and upon information and belief, DrJ makes available for viewing or download by the general public TER 1402-01, for rigid insulation panels "Xci CG (Class A), Xci Ply (Class A), Xci Foil (Class A), Xci Foil (Class A) PLUS, and Xci 286 Air Barrier, Water Resistive Barrier, and Fire Performance in Exterior & Interior Walls of Buildings of Type I-V Construction" sold by Hunter Panels, LLC. *See* **Exhibit D**.

34.     For example, and upon information and belief, the substantively identical TER 1402-01 is also available for viewing and/or download (again, by any persons who have set up an account) bearing the seal of Ryan Dexter, Illinois Professional Engineer No. 62063066, a manager of DrJ Illinois (according to Illinois Secretary of State records) and Vice President of Engineering of DrJ Wisconsin. *See* **Exhibit E**. The sealed TER 1402-01 comes with a two-page cover letter, the first page of which bears the seal and signature of Ryan Dexter and the signature of Larry Wainright, Vice President Product Certification of DrJ Wisconsin.

35.     Upon information and belief, TER 1402-01 is purposefully directed at persons or entities involved in construction projects within the jurisdiction of the City of Chicago, among other AHJs, "authority having jurisdiction (AHJ)," as DrJ refers to them. *See* **Exhibits D** and **E** at p. 15 (¶ 9.11), and Appendix A pp. 16-17. The rigid insulation panels that are the subject of TER

1402-01 are manufactured and made available by Hunter Panel, LLC in Franklin Park, Illinois, among other locations. *See id.*, p. 14 (¶ 9.9).

36.     DrJ has launched a multi-faceted advertising campaign to confuse and deceive consumers into believing that DrJ and its goods and services are approved by, or associated with ICC, when they are not.

37.     At the heart of DrJ's campaign is the "Certification" section of DrJ's website, located at www.drjcertification.org ("DrJ Website") and the computer-generated, sealed TERs, which contain numerous unauthorized uses of the ICC Marks and/or false and misleading statements about the parties' respective goods and services. Plaintiffs are currently aware of a number of examples of DrJ's misconduct, which are identified below.

**i.     The Infringing "Product Approval Checklist for Code Officials"**

38.     The DrJ Website homepage includes an "About Us" tab. *See* **Exhibit F**. Within the "About Us" dropdown menu of DrJ's Website is a tab entitled "ANAB Accredited." When a user clicks on the tab, the user is taken to a webpage bearing the title "ANAB Accredited Certification Body," which includes the sentence "ICC's approval procedure is called the ICC Product Approval Checklist for Code Officials." *See* **Exhibit G**. The portion "ICC Product Approval Checklist for Code Officials" is a hypertext link that takes the user to a one-page .pdf file entitled *Product Approval Checklist for Code Officials* ("Checklist Version 1") *See* **Exhibit H**.

39.     The cover letter to TER 1402-01 includes the sentence "DRJ's code compliance work has been performed in concert with ICC's Product Approval Checklist for Code Officials." *See* **Exhibit E**. The portion "ICC Product Approval Checklist for Code Officials" is a hypertext link that takes the user to a one-page .pdf file entitled *Product Approval Checklist for Code*

*Officials* ("Checklist Version 2"), which is nearly identical to Checklist Version 1 (Checklist Version 1 and Version 2 are collectively referred to herein as "Checklists"). *See* **Exhibit I**.

40.　The "document properties" metadata for Checklist Version 1 indicates it was created by author "Kirk Grundahl," a manager of DrJ Illinois (according to Illinois Secretary of State records) and the President of DrJ Wisconsin, on May 25, 2021 at 12:18:48 PM and modified on December 26, 2022 at 10:55:02 AM. *See* **Exhibit J**.

41.　The "document properties" metadata for Checklist Version 2 indicates it was created by author "tkutz" on October 4, 2023 at 1:42:30 PM and modified on October 4, 2023 at 2:07:54 PM. *See* **Exhibit K**. Upon information and belief, "tkutz" is Trish Kutz, Operations Management at DrJ Wisconsin.

42.　The Checklists feature the ICC INTERNATIONAL CODE COUNCIL logo (shown below) prominently in the top left-hand corner, giving the reader the clear impression that ICC has created, approved or endorsed use of the Checklists. *See id.* However, Plaintiffs were not aware of the Checklists and did not authorize DrJ's use of this ICC INTERNATIONAL CODE COUNCIL logo on the Checklists. This is trademark infringement and unfair competition, and violates the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).



**ii.　The False DrJ "ICC-Approval" and "ICC Accepted" Advertising Claims**

43.　On the DrJ Website and in other marketing collateral, DrJ makes numerous false claims relating to DrJ and/or its products or services being "ICC-Approved," "ICC Accepted" and/or other false claims relating to "ICC" followed by "approved" or "approval" or "accepted."

44.     For example, the "ANAB Accredited Certification Body" page of the DrJ Website prominently states in large, bold letters that DrJ is "Simplifying the 'ICC-Approval' Process." *See* **Exhibit G**. Immediately underneath that statement, DrJ includes the sentence "ICC's approval procedure is called the ICC Product Approval Checklist for Code Officials." *Id.* These claims are literally false as ICC does not have any "approval process" or "approval procedure," much less an "approval procedure" that "is called ICC Product Approval Checklist for Code Officials."

45.     DrJ's Website and marketing collateral are replete with these false or misleading and damaging "approval" claims, including these false statements: "'ICC Approved' can also be termed ICC Accepted, ICC Report, ICC Evaluation … **These market-specific terms all refer to the acceptance of accredited agencies.** Therefore, in market terms, **DRJ is 'ICC-Approved.'"** *See* **Exhibit G**. (emphasis in original). In a green bar graphic toward the bottom of the DrJ Website webpage "ANAB Accredited Certification Body," DrJ repeats the claim that "In market terms, DrJ is 'ICC-Approved.'" *Id.* "ICC Approved" *cannot* also be termed "ICC Accepted, ICC Report, ICC Evaluation" and, because Plaintiffs do not have a process or procedure for "approving" any companies, DrJ is not "ICC-Approved" in any way. These claims are false.

46.     The cover letter to TER 1402-01, signed by and sealed with the Illinois Professional Engineer seal of Ryan Dexter and signed by Larry Wainright, Vice President of Certification (*see* **Exhibit E**), includes a hypertext link to the "ANAB Accredited Certification Body" page of the DrJ Website (**Exhibit G**) in the sentence "DrJ's procedures are fully compliant with 17065 certification procedures and DrJ's scope of expertise" where the words "DrJ's procedures" are the hypertext link.

47.     DrJ's use of "ICC-Approved" is particularly damaging to Plaintiffs and the public in general because, as noted in Paragraph 20 above with respect to proper authorized third-party

12

use of ICC-ES's Marks of Conformity in the Usage Guide, Plaintiffs expressly prohibit the use of words like "ICC Approved" (and variations like "ICC Accepted") when referencing an ICC-ES evaluated product. The only proper reference for entities whose products have been evaluated is "ICC-ES Evaluated." Again, this is because only building code officials and government regulators are authorized to officially approve a building product for installation.

### iii. The False and Misleading "Scope Comparison" Document

48. On information and belief, DrJ is accredited by the ANSI National Accreditation Board ("ANAB") in the standard ISO/IEC 17065, "Conformity Assessment – Requirements for Bodies Certifying Products, Processes and Services" (the "ANAB Product Certification Accreditation Program").

49. According to ANAB, product certification "attests that a product meets specified standards, especially for quality or safety and health issues." *See* **Exhibit L**. "ANAB accreditation recognizes the competence of bodies to carry out product or personnel certification in accordance with requirements defined in international standards." *Id.*

50. The ANAB Product Certification Accreditation Program includes sector programs for specific certifiers and covers a multitude of "fields" as defined by the International Organization for Standardization's International Classification for Standards Codes ("ICS Codes") (*see* **Exhibit M**), including, among many others, the following fields (which DrJ refers to as "sections"): "13 – Environment. Health protection. Safety;" "21 – Mechanical systems and components for general use;" and "91 – Construction materials and building." *See* **Exhibit N**.

51. DrJ's certificate of accreditation showing the scope of DrJ's accreditation under the ANAB Product Certification Accreditation Program is attached as **Exhibit O**.

52.     ICC-ES's certificates of accreditation showing the scope of ICC-ES's accreditation under the ANAB Product Certification Accreditation Program are attached as **Exhibits P** and **Q**.

53.     The DrJ Website contains multiple links to "DrJ's Scope Comparison" document ("Scope Comparison Chart"). The Scope Comparison document is attached as **Exhibit R**, and an excerpt from that document is depicted below.

| ICS No. | ICS Description | DrJ | ICC-ES | IAPMO | Intertek | UL |
|---------|----------------|-----|--------|-------|----------|-----|
| **Section 71: CHEMICAL TECHNOLOGY** | | | | | | |
| 71.100 | **Products of the Chemical Industry** | ✔ | ✔ | ✔ | ✔ | ✔ |
| 71.100.50 | Wood-protecting chemicals | ✔ | ✔ | | | |
| **Section 77: METALLURGY** | | | | | | |
| 77.060 | **Corrosion of Metals** | ✔ | ✔ | | | ✔ |
| 77.140 | **Iron & Steel Products** | ✔ | ✔ | ✔ | | |
| 77.140.01 | Iron & steel products in general | ✔ | | ✔ | | |
| 77.140.10 | Heat-treatable steels | ✔ | | | | |
| 77.140.15 | Steels for reinforcement of concrete | ✔ | ✔ | | | |
| 77.140.20 | Stainless steels | ✔ | | | | |
| 77.140.25 | Spring steels | ✔ | | | | |
| 77.140.30 | Steels for pressure purposes | ✔ | | | | |
| 77.140.35 | Tool steels | ✔ | | | | |
| 77.140.40 | Steels w/ special magnetic properties | ✔ | | | | |
| 77.140.45 | Non-alloyed steels | ✔ | | | | |
| 77.140.50 | Flat steel products & semi-products | ✔ | ✔ | | | |
| 77.140.60 | Steel bars & rods | ✔ | ✔ | | | |
| 77.140.65 | Steel wire, wire ropes & link chains | ✔ | ✔ | | | |
| 77.140.70 | Steel profiles | ✔ | ✔ | | | |
| 77.140.75 | Steel pipes & tubes for specific use | ✔ | | ✔ | | |
| 77.140.80 | Iron & steel castings | ✔ | | | | |
| 77.140.85 | Iron & steel forgings | ✔ | | | | |
| 77.140.99 | Other iron & steel products | ✔ | | ✔ | | |

54.     The cover letter to TER 1402-01, signed by and sealed with the Illinois Professional Engineer seal of Ryan Dexter and signed by Larry Wainright, Vice President of Certification (*see* **Exhibit E**), includes a hypertext link to the Scope Comparison Chart (**Exhibit R)** in the sentence "DrJ's procedures are fully compliant with 17065 certification procedures and DrJ's scope of expertise" where the words "scope of expertise" are the hypertext link.

55.     The Scope Comparison Chart purports to compare DrJ's scope of expertise in various fields of the ANAB Product Certification Accreditation Program with other providers, including ICC-ES. DrJ selectively includes twelve sections (ICS Codes) of expertise and even more selectively includes certain ICS Code numbers within those sections in which DrJ is accredited.

56.     Misleadingly, DrJ fails to include in the Scope Comparison Chart the sections—or ICS Code numbers within sections—in which ICC-ES is accredited but DrJ is not. This gives consumers the false or misleading impression that DrJ is more broadly qualified than ICC-ES when, in reality, ICC-ES has more accreditations than DrJ. *Compare* **Exhibit O** *with* **Exhibits P** and **Q**.

57.     Finally, the Scope Comparison Chart also includes at the bottom of the page the same false "ICC approval" advertising claims as discussed above: **"IN MARKET TERMS, DrJ IS 'ICC-APPROVED'"** and "*ICC's approval procedure is called the ICC Product Approval Checklist for Code Officials. 'ICC Approved' can also be termed ICC Accepted, ICC Report, ICC Evaluation …." *See* **Exhibit R** (emphasis in original).

### iv.     The False "Performed in Concert With" Claim

58.     As stated in Paragraph 38 above, the cover letter to TER 1402-01 includes the sentence "DrJ's code compliance work has been performed in concert with ICC's Product Approval Checklist for Code Officials." *See* **Exhibit E**.

59.     This claim is literally false because ICC does not have a "Product Approval Checklist for Code Officials." As alleged in Paragraphs 38-42 above, this is a document created by DrJ without ICC's knowledge or authorization that infringes ICC's trademark rights and was

prepared to create the false impression that ICC has created, approved or endorsed use of the Checklist.

60.     This claim is also literally false because ICC does not perform code compliance work in concert with DrJ.

61.     Upon information and belief, and further to the allegations in Paragraph 32 above, the cover letter accompanying TER 1402-01 is a form letter that is dynamically created (using a custom software tool) whenever a person has requested to view or download a TER bearing the seal of a licensed Professional Engineer of DrJ. *See* Paragraph 32 and **Exhibit C**.

62.     Accordingly, the damage to ICC and the general public is significant because, using custom software it had developed for it, DrJ can easily reproduce these false claims and, upon information and belief, has done so in numerous reports provided to DrJ customers each year, including to consumers of TERs bearing the seal of an Illinois licensed Professional Engineer. *See* **Exhibit C** ("The Engineer's seal, along with the current date and state-specific notes, are dynamically added to uploaded PDF reports. A series of validations run each time a new seal is requested to ensure that the report can be sealed. Staff receives reports summarizing the number of sealed reports that have been downloaded in a given period and the states in which they were sealed.").

     **v.      DrJ Refuses to Cease its Illegal Conduct**

63.     On March 26, 2024, counsel for Plaintiffs sent a cease and desist letter to DrJ demanding, among other things, that DrJ: (1) "Remove the 'ICC Product Approval Checklist for Code Officials' document from the DrJ Website and delete or destroy all physical and electronic copies of it;" (2) "Remove all references on the DrJ Website and other materials created or distributed by DrJ to the 'ICC approval process,' the 'ICC approval procedure," and DrJ's

supposed "ICC-Approved" status;" (3) Remove the competitors' columns from the 'Scope of Expertise' document or include the full scope of the parties' accreditations to provide sufficient context so as not to mislead consumers;" and (4) "Agree in writing to refrain from using the ICC Marks or making false or misleading statements concerning ICC in the future."

64.     In a pugnacious, digressive written response from Kirk Grundahl, dated April 8, 2024, "updated" on April 14, 2024, rather than comply with Plaintiffs' demands, DrJ attempted to defend its unlawful conduct with irrelevant and/or meritless arguments. To date, DrJ has not complied with any of Plaintiffs' demands that its willful, unlawful conduct cease. In fact, although DrJ updated its website during this time period, DrJ did not remove any of the infringing content or the false and misleading statements.

### vi.     The Consequences of Defendants' Unlawful Activities

65.     DrJ's use of the ICC Marks for directly competing services is likely to confuse and mislead consumers.

66.     DrJ's false or misleading claims in its commercial advertising misrepresenting Defendants' goods and services and the goods and services of Defendants' direct competitors ICC and ICC-ES have deceived, and are continuing to deceive, a substantial segment of the consuming public and are likely to influence consumer purchasing decisions.

67.     Unless Defendants cease (1) their unauthorized, infringing, and intentionally confusing use of the ICC Marks; and (2) their false and misleading advertising, customers will continue to be confused by Defendants' false and deceptive acts. Such confusion will allow Defendants to destroy and devalue the ICC Marks and irreparably harm Plaintiffs' business, reputation, and goodwill.

68. Defendants' acts described above are knowing and willful. With full knowledge of ICC's objections, Defendants continued to disseminate the false and misleading claims described above and continued to use the ICC Marks.

69. Defendants' activities have damaged and will continue to damage the reputation, business and goodwill of Plaintiffs. Unless enjoined by the Court, Defendants will continue to infringe and make false and misleading statements.

70. Plaintiffs have no adequate remedy at law and Defendants' activities have caused and, if not enjoined, will continue to cause irreparable harm to Plaintiffs including their business, reputation and goodwill.

## COUNT I
### Federal Trademark Infringement
### 15 U.S.C. § 1114
### Against Defendant DrJ Wisconsin

71. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

72. Defendant DrJ Wisconsin, without the consent of Plaintiffs, has made use in interstate commerce of one or more of the ICC Marks in connection with the sale, offering for sale, distribution and/or advertising of DrJ Wisconsin's goods and/or services.

73. Defendant DrJ Wisconsin's use of one or more of the ICC Marks is likely to cause confusion or to cause mistake or to deceive consumers into thinking that DrJ Wisconsin and its products and/or services are authorized by, or affiliated, connected or otherwise associated with Plaintiffs and/or their products and/or services.

74. Defendant DrJ Wisconsin's actions complained of herein constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

75.     Defendant DrJ Wisconsin's actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiffs to suffer irreparable harm. Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

76.     Plaintiffs have also sustained damages as a direct and proximate result of Defendant DrJ Wisconsin's actions complained of herein in an amount to be proven at trial, including without limitation DrJ Wisconsin's profits and/or gains of any kind resulting from DrJ Wisconsin's unlawful acts.

77.     Defendant DrJ Wisconsin's actions complained of herein have been willful, intentional, and made in bad faith. Plaintiffs are therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT II**
**Federal Unfair Competition and False Designation of Origin**
**15 U.S.C. § 1125(a)**
**Against Both Defendants**

78.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

79.     As a result of ICC's extensive and continuous marketing, advertising, and sale of goods and services under the ICC Marks, the ICC Marks have become widely known and ICC has become identified in the public mind as the entity behind goods and services offered under the ICC Marks.

80.     As a result of ICC's experience and care in providing goods and services under the ICC Marks, ICC's goods and services have become widely known and have acquired a reputation for excellence. Moreover, the ICC Marks have become associated with ICC's goods and services,

and have come to symbolize the reputation for quality and excellence of ICC's goods and services. As such, the ICC Marks are distinctive.

81.     Defendants are not authorized to use the ICC Marks, any confusingly similar mark, or any mark that in any way represents or implies that DrJ's goods and services are in any way associated with or approved by ICC.

82.     Defendants' unauthorized use of the ICC Marks, acting alone, or in concert with, or one at the direction of the other, as alleged herein constitutes unfair competition in violation of the common law. Defendants, with knowing, willful, and intentional disregard for ICC's rights, continues to advertise, promote, and sell goods and services bearing the ICC Marks through marketing and distribution channels also used by ICC. Such acts are likely to cause confusion and mistake among an appreciable number of reasonable customers as to the source or sponsorship of Defendants' goods and/or services.

83.     Defendants' actions complained of herein constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.     DrJ Illinois, acting alone, or in concert with, or at the direction of DrJ Wisconsin, furthers the unlawful acts complained of herein, and heightens the risks associated therewith, when it affixes, and/or causes to be affixed, to DrJ Technical Evaluation Reports offered to consumers, the Illinois-licensed Professional Engineer seal of Ryan Dexter on the same page as, and/or in close proximity to, the unauthorized use of the ICC Marks because (1) Illinois-licensed Professional Engineers are licensed for the protection of the public, health, safety, and welfare; and (2) the seal used by Illinois-licensed Professional Engineers serves as a symbol of the credibility and expertise of practicing engineers in the State of Illinois.

85. Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause ICC to suffer irreparable harm; ICC has no adequate remedy at law. ICC is therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

86. ICC has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind resulting from Defendants' unlawful acts.

87. Defendants' actions complained of herein have been willful, intentional, and made in bad faith. ICC is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT III**
**False Advertising**
**15 U.S.C. § 1125(a)**
**Against Defendant DrJ Wisconsin**

88. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

89. Defendant DrJ Wisconsin advertises, markets, offers to sell, and sells its products and services in interstate commerce.

90. Defendant DrJ Wisconsin willfully and deliberately made false or misleading descriptions and representations of fact in commercial advertising and promotion that misrepresent the nature, characteristics and qualities of DrJ Wisconsin's goods and services, and the goods and services of DrJ Wisconsin's competitors ICC and ICC-ES. The claims described above and incorporated herein are literally false, either on their face or by necessary implication, or, at a minimum, misleading.

91.     Defendant DrJ Wisconsin's false and misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public.

92.     Defendant DrJ Wisconsin's false and misleading statements are material; they are likely to influence the purchasing decisions of reasonable consumers of the parties' goods and services.

93.     Defendant DrJ Wisconsin's unlawful acts described herein violate Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

94.     Plaintiffs have been and continue to be damaged by DrJ Wisconsin's false advertising, including through direct diversion of sales from Plaintiffs to DrJ Wisconsin and the lessening of the goodwill associated with Plaintiffs and their products and services.

95.     Defendant DrJ Wisconsin's actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiffs to suffer irreparable harm. Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to and seek injunctive relief pursuant to 15 U.S.C. § 1116.

96.     Plaintiffs have also sustained damages as a direct and proximate result of Defendant DrJ Wisconsin's actions complained of herein in an amount to be proven at trial, including without limitation DrJ Wisconsin's profits and/or gains of any kind resulting from DrJ Wisconsin's unlawful acts.

97.     Defendant DrJ Wisconsin's actions complained of herein have been willful, intentional, and made in bad faith. Plaintiffs are therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
## Illinois Common Law Unfair Competition
## Against Both Defendants

98.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

99.     As a result of ICC's extensive and continuous marketing, advertising, and sale of goods and services under the ICC Marks, the ICC Marks have become widely known and ICC has become identified in the public mind as the entity behind goods and services offered under the ICC Marks.

100.    As a result of ICC's experience and care in providing goods and services under the ICC Marks, ICC's goods and services have become widely known and have acquired a reputation for excellence. Moreover, the ICC Marks have become associated with ICC's goods and services, and have come to symbolize the reputation for quality and excellence of ICC's goods and services. As such, the ICC Marks are distinctive.

101.    Defendants are not authorized to use the ICC Marks, any confusingly similar mark, or any mark that in any way represents or implies that DrJ's goods and services are in any way associated with or approved by ICC.

102.    Defendants' unauthorized use of the ICC Marks, acting alone, or in concert with, or one at the direction of the other, as alleged herein constitutes unfair competition in violation of the common law. Defendants, with knowing, willful, and intentional disregard for ICC's rights, continues to advertise, promote, and sell services bearing the ICC Marks through marketing and distribution channels used by ICC. Such acts are likely to cause confusion and mistake with an appreciable number of reasonable customers as to the source or sponsorship of Defendants' goods and/or services.

103.    Defendants' actions complained of herein constitute false designation of origin and false and misleading descriptions and representations in violation of Illinois law.

104.    DrJ Illinois, acting alone, or in concert with, or at the direction of DrJ Wisconsin, furthers the unlawful acts complained of herein, and heightens the risks associated therewith, when it affixes, and/or causes to be affixed, to DrJ Technical Evaluation Reports offered to consumers, the Illinois-licensed Professional Engineer seal of Ryan Dexter on the same page as, and/or in close proximity to, the unauthorized use of the ICC Marks because (1) Illinois-licensed Professional Engineers are licensed for the protection of the public, health, safety, and welfare; and (2) the seal used by Illinois-licensed Professional Engineers serves as a symbol of the credibility and expertise of practicing engineers in the State of Illinois.

105.    Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause ICC to suffer irreparable harm. ICC has no adequate remedy at law. ICC is therefore entitled to and seeks injunctive relief.

106.    ICC has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind resulting from Defendants' unlawful acts.

107.    Defendants' actions complained of herein have been willful, intentional, and made in bad faith. ICC is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant.

**COUNT V**
**Violation of Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/1 *et seq.***
**Against Both Defendants**

108.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

109.    Defendants' acts complained of herein, acting alone, or in concert with, or one at the direction of the other, including its false advertising, unfair competition, and trademark infringement, are creating a likelihood of confusion and mistake among, and deceiving consumers as to the as to the affiliation, connection or association with Plaintiffs, and/or the origin, sponsorship or approval of DrJ's goods and services and thus violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

110.    DrJ Illinois, acting alone, or in concert with, or at the direction of DrJ Wisconsin, furthers the unlawful acts complained of herein, and heightens the risks associated therewith, when it affixes, and/or causes to be affixed, to DrJ Technical Evaluation Reports offered to consumers, the Illinois-licensed Professional Engineer seal of Ryan Dexter on the same page as, and/or in close proximity to, the false advertising, unfair competition, and/or trademark infringement because (1) Illinois-licensed Professional Engineers are licensed for the protection of the public, health, safety, and welfare; and (2) the seal used by Illinois-licensed Professional Engineers serves as a symbol of the credibility and expertise of practicing engineers in the State of Illinois.

111.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered and will continue to suffer substantial injury and irreparable damage to their business, reputation, and goodwill.

112.    Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiffs to suffer irreparable harm; Plaintiffs have no adequate remedy at law. Plaintiffs therefore are entitled to and seek injunctive relief.

113.    Defendants' actions complained of herein have been willful, intentional, and made in bad faith. Plaintiffs are therefore entitled to an award of their costs and reasonable attorneys' fees.

**COUNT VI**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1 *et seq*.**
**Against Both Defendants**

114.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

115.    Defendants' acts complained of herein, acting alone, or in concert with, or one at the direction of the other, including its false advertising, unfair competition, and trademark infringement in the course of trade, are creating a likelihood of confusion, mistake and deception among consumers as to the as to the affiliation, connection or association with Plaintiffs, and/or the origin, sponsorship or approval of DrJ's goods and services and thus violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.

116.    DrJ Illinois, acting alone, or in concert with, or at the direction of DrJ Wisconsin, furthers the unlawful acts complained of herein, and heightens the risks associated therewith, when it affixes, and/or causes to be affixed, to DrJ Technical Evaluation Reports offered to consumers, the Illinois-licensed Professional Engineer seal of Ryan Dexter on the same page as, and/or in close proximity to, the false advertising, unfair competition, and/or trademark infringement because (1) Illinois-licensed Professional Engineers are licensed for the protection of the public,

health, safety, and welfare; and (2) the seal used by Illinois-licensed Professional Engineers serves as a symbol of the credibility and expertise of practicing engineers in the State of Illinois.

117.    Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiffs to suffer irreparable harm; Plaintiffs have no adequate remedy at law. Plaintiffs therefore are entitled to and seek injunctive relief.

118.    Plaintiffs have also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind resulting from Defendants' unlawful acts.

119.    Defendants' actions complained of herein have been willful, intentional, and made in bad faith. Plaintiffs are therefore entitled to an award of their costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter judgment that Defendant DrJ Wisconsin has violated the Lanham Act, 15 U.S.C. § 1114.

B.    Enter judgment that both Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), the Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*, the Consumer Fraud and Deceptive Business Practices, 815 ILCS 505/1, *et seq.*, and the common law of Illinois.

C.    Enter judgment against Defendants that the above acts were willful and intentional, making this an exceptional case.

D.    Preliminarily and permanently enjoin Defendants and its officers, directors, agents, employees, attorneys, successors, and assigns, and all others in active concert or participation with any of them, from:

a.    using (i) the ICC Marks, (ii) any confusingly similar marks or names, including misspellings or variations, and/or (iii) any marks or names that in any way represent or imply that Defendants' products or services are in any way associated with ICC or ICC-ES, in any way, including without limitation use as a trademark, service mark, trade name, domain name, social media account or page name, or any other usage that is likely to cause consumer confusion;

b.    making any further false or misleading claims that Defendants are "ICC Approved," "ICC-Approved, or has "ICC Approval," "ICC-Approval," or is "ICC Accepted," or claims to know "ICC's approval process," "ICC's approval procedure," and/or any similar claims;

c.    making any comparison of Defendants' scope of expertise using ICS Codes with Plaintiff's scope of expertise using ICS Codes without including all areas of expertise of Plaintiffs even where Defendants do not possess the same expertise;

d.    committing any acts calculated to cause consumers to believe that Defendants' goods or services are sold under the authorization, control or supervision of ICC or ICC-ES, or are sponsored by, approved by, or otherwise connected with ICC or ICC-ES;

e.    otherwise engaging in unfair competition or deceptive trade practices as alleged in this Complaint; and

f.    causing, engaging in or permitting others to do any of the aforesaid acts.

E.     Order Defendants to remove from any print or digital materials, or the internet, including their websites and social media accounts, any advertising or promotion or other activities that use the ICC Marks or that otherwise state or imply that Defendants or their goods or services are approved by ICC, including but not limited to the claims "ICC Approved", "ICC-Approved, "ICC Approval", "ICC-Approval" "ICC Accepted", "ICC's approval process" and/or "ICC's approval procedure."

F.     Order Defendants' webhost(s) be required to permanently remove and takedown any websites and/or webpages of Defendants, or under Defendants' control, that use the ICC Marks or that otherwise state or imply that Defendants or their goods or services are approved by ICC, including but not limited to the claims "ICC Approved", "ICC-Approved, "ICC Approval", "ICC-Approval" "ICC Accepted", "ICC's approval process" and/or "ICC's approval procedure."

G.     Order Defendants to issue a corrective press release titled "Court-Ordered Statement Regarding DrJ's False and Misleading Statements and Infringing Conduct" no later than thirty (30) days after the date on which an injunction is entered and post an active hypertext link to the press release in a prominent location on the home page of the certification section of the drjengineering.org website (https://www.drjcertification.org/cert-home) and/or the home page of any other website owned or controlled by DrJ through which DrJ advertises and conducts its certification business, for at least five (5) years after the entry of this injunction, that (i) states the press release is ordered by the Court in the *ICC v. DrJ* litigation to provide customers and prospective customers of DrJ with information about false and misleading statements and infringing conduct that DrJ has made in its advertisements and marketing and in its technical evaluation reports, (ii) states definitely that DrJ and its goods and services are not approved by

Plaintiffs; and (iii) lists each and every DrJ statement found to be false and misleading by the Court.

H.      Order Defendants to file with the Court and serve on counsel for Plaintiffs within thirty (30) days after the entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with the injunction.

I.      Award Plaintiffs damages for the claims of this Complaint.

J.      Order Defendants to account for and disgorge to Plaintiffs all profits Defendants have secured by reason of the unlawful acts complained of herein.

K.      Treble damages resulting from Defendant DrJ Wisconsin's false advertising and trademark infringement, and both Defendants' unfair competition under the Lanham Act in accordance with the provisions of 15 U.S.C. § 1117; and award punitive damages under Illinois law for Defendants' violations of Illinois law.

L.      Order Defendants to pay Plaintiffs pre-judgment interest on all damages.

M.      Award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

N.      Award Plaintiffs the costs of suit incurred herein.

O.      For any such other or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues appropriately triable by a jury.

Dated: June 17, 2024                     Respectfully submitted,

                                By:      */s/ Brent A. Hawkins*
                                         Brent A. Hawkins
                                         Illinois Bar No. 6243086
                                         Brian P. O'Donnell
                                         Illinois Bar No. 6275621

Kathryn Ann Feiereisel
Illinois Bar No. 6310852
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
Telephone: (312) 324-1000
Facsimile: (312) 324-1001
brent.hawkins@morganlewis.com
brian.odonnell@morganlewis.com
katie.feiereisel@morganlewis.com

*Counsel for Plaintiffs* INTERNATIONAL
CODE COUNCIL, INC. and ICC
EVALUATION SERVICE, LLC